UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Plaintiff,

-against-

AZ 400 HERKIMER LLC, AMARBIN AHMED, EVERYDAY CAPITAL LLC, and SCARANO ARCHITECT PLLC,[1]

Defendants.

-----------------------------------x

**MEMORANDUM & ORDER**
24-CV-04569(EK)(LKE)

ERIC KOMITEE, United States District Judge:

Plaintiff Federal National Mortgage Association brought this action to foreclose on an apartment building at 400 Herkimer Street in Brooklyn. Fannie Mae alleges that defendant AZ 400 Herkimer LLC defaulted on a loan secured by a mortgage on the property. In addition to AZ 400, plaintiff named as defendants Amarbin Ahmed, the loan's guarantor, and two entities that hold junior liens on the property, Everyday Capital LLC and Scarano Architect PLLC. The Clerk of Court entered default against both entities after neither appeared in this action.

Plaintiff has now moved for summary judgment against AZ 400 and Ahmed. For the reasons set forth below, the motion is granted.

---

[1] The Clerk of Court is respectfully directed to amend the official caption of the case in accordance with the caption on this Order.

## I. Background

The following facts are drawn from plaintiff's Local Rule 56.1 statement and the exhibits appended to its summary judgment papers. AZ 400 Herkimer LLC ("AZ 400") and Ahmed failed to timely respond to plaintiff's motion, and the Court deemed the motion fully submitted in September 2025. Order, ECF No. 69. In July 2026, after obtaining new counsel, both defendants submitted letters opposing the motion with the Court's permission. Def.'s Ltr. in Opp'n to Summ. J. ("Def.'s Opp'n Ltr.") 1-2, ECF No. 94; Guarantor's Ltr. in Opp'n to Summ. J.("Guarantor's Opp'n Ltr.") 1, ECF No. 95. Because they did not submit Local Rule 56.1 statements, however, the facts in plaintiff's statement are deemed admitted. Local Civ. R. 56.1(c); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001). The Court has nonetheless reviewed the record independently and credits only those assertions that it supports. *Holtz*, 258 F.3d at 73-74.

### A. The Loan's Issuance and Assignment

On May 25, 2023, Greystone Servicing Company LLC ("Greystone") lent $18,296,000 to AZ 400. Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s Rule 56.1") ¶ 11, ECF No. 63; Pl.'s Ex. 1, Amended and Restated Multifamily Note ("Note"), ECF No. 66-1. AZ 400 owns the apartment building located at 400 Herkimer Street, which has approximately 150 residential units.

Pl.'s Rule 56.1 ¶ 5; Pl.'s Ex. 2, Multifamily Loan and Security Agreement ("Loan Agreement") 120, ECF No. 66-2.[2] The Loan Agreement required AZ 400 to make monthly payments at an interest rate of 5.52% from July 1, 2023, until June 1, 2033, when the outstanding principal would come due. Pl.'s Rule 56.1 ¶¶ 21-22; Loan Agreement, Schedule 2.

Greystone secured the Note with a mortgage on the property, which covered both the apartment building and the rent payments collected from its tenants. Pl.'s Rule 56.1 ¶ 13; Pl.'s Ex. 3, Consolidation, Extension, and Modification Agreement ("Mortgage Agreement") 16, ECF No. 66-3.

Amarbin Ahmed, AZ 400's principal, also executed a personal guaranty. Pl.'s Rule 56.1 ¶ 14; Pl.'s Ex. 4, Guaranty of Non-Recourse Obligations ("Guaranty"), ECF No. 66-4. Ahmed "guarantee[d] to [Greystone] the full and prompt payment" of "all amounts, obligations, and liabilities" AZ 400 owed to Greystone under Article 3 (Personal Liability) of the Loan Agreement. Guaranty 3.

On the day that AZ 400 and Greystone reached their agreement, Greystone assigned the Note, Mortgage Agreement, and Guaranty to the Federal National Mortgage Association ("Fannie Mae"). Pl.'s Rule 56.1 ¶ 18; Pl.'s Ex. 5, Assignment of

[2] Page numbers in record citations to documents other than briefs refer to ECF pagination.

Mortgages, As Consolidated ("Mortgage and Note Assignment") 4-5, ECF No. 66-5. The Mortgage and Note Assignment provided that Greystone "assigns [and] grants" all of its interest in those instruments to Fannie Mae for "valuable consideration." Mortgage and Note Assignment 4-5. Greystone also assigned Fannie Mae its interest in the Loan Agreement through a separate document. Pl.'s Ex. 6, Assignment of Collateral Agreements ("Loan Agreement Assignment") 2-3, ECF No. 66-6.

**B. AZ 400's Default**

AZ 400 defaulted in three ways.

*First,* AZ 400 failed to make the monthly payment due on February 1, 2024. Pl.'s Rule 56.1 ¶ 39; *see* Loan Agreement § 14.01(a). Thereafter, AZ 400 failed to make any subsequent payments. Pl.'s Rule 56.1 ¶ 39.

*Second*, AZ 400 failed to furnish the financial reporting documents required by the Loan Agreement. *Id.* ¶ 41. The Loan Agreement provided that "after the end of each first, second, and third calendar quarter," AZ 400 must "furnish" "a statement of income and expenses." *Id.* ¶ 40; Loan Agreement§ 8.02(b)(1). The Loan Agreement also required AZ 400 to "furnish . . . a statement of income and expenses and a statement of cash flows" at "the end of each calendar year." Loan Agreement § 8.02(b)(3). The quarterly documents were due within forty-five days after the end of each of the first three

quarters; the annual reporting was due within 120 days after the end of the calendar year. Pl.'s Rule 56.1 ¶ 40; Loan Agreement § 8.02(b)(1)-(2). The Loan Agreement provided further that AZ 400 could cure a failure to provide the required documents within thirty days after receiving written notice from Fannie Mae; otherwise, the failure would constitute a default. Pl.'s Rule 56.1 ¶ 42; Loan Agreement § 14.01(c).

AZ 400 failed to provide any of the required reporting documents, nor did it timely cure. Pl.'s Rule 56.1 ¶ 41. Specifically, Fannie Mae notified AZ 400 on November 17, 2023, that it had failed to provide the required third-quarter documents; AZ 400 did not respond. *Id.* ¶ 42. Fannie Mae likewise informed AZ 400 on May 15, 2024, that it had failed to furnish the 2023 year-end documents; AZ 400 again failed to respond. *Id.* AZ 400 did not provide any of the required documents for subsequent reporting periods. *Id.*

*Third*, AZ 400 issued a subordinate mortgage on the property, and Scarano Architect separately attached a mechanic's lien to it. Pl.'s Rule 56.1 ¶ 43. The Loan Agreement provided that "a granting, pledging, creating, or attachment of a lien, encumbrance or security interest [on the property] (whether voluntary, involuntary, or by operation of law)" constituted an "automatic Event of Default." *Id.* ¶ 45; *see* Loan Agreement § 14.01(a)(6); *id.* Schedule 1. James Noakes, a Senior Asset

Manager at Fannie Mae, attests that the property's title report shows that on June 23, 2023, AZ 400 granted a $2.5 million junior mortgage to defendant Everyday Capital. Decl. of James Noakes ("Noakes Decl.") ¶ 41, ECF No. 66; Pl.'s's Ex. 7, Subordinate Mortgage Between AZ 400 and Everyday Capital 3, ECF No. 66-7. And in April 2024, defendant Scarano Architect PLLC filed a mechanic's lien on the property for approximately $84,000 for unpaid work it had performed. Noakes Decl. ¶ 41; Pl.'s Ex. 8, Scarano Architect's Mechanic's Lien 2, ECF No. 66-8.

On May 20, 2024, Fannie Mae informed AZ 400 by letter that it was in default for the reasons discussed above. Pl.'s Rule 56.1 ¶ 47. Fannie Mae brought the instant foreclosure action in June 2024. Compl., ECF No. 1.[3]

In August 2024, Fannie Mae moved to appoint a receiver — Trigild IVL ("Trigild") — to manage the property while this action was pending. Mot. to Appoint Receiver, ECF No. 9. The Court granted the motion in October 2024; Trigild has been managing the property since. Order Appointing Receiver, ECF No. 22.

---

[3] In November 2024, AZ 400 filed for Chapter 11 bankruptcy, ECF No. 25, and this Court stayed the action. Mem. & Order, ECF No. 35. The Court lifted its stay in May 2025 after receiving notice from the parties that the bankruptcy court lifted the automatic stay. ECF No. 37; Dkt. Order dated May 27, 2025. AZ 400 again filed for bankruptcy in October 2025, ECF No. 76, and the Court again stayed the case. Dkt. Order dated Oct. 31, 2025. After the bankruptcy court lifted that automatic stay, ECF No. 79, this Court lifted its stay in March 2026. Dkt. Order dated March 24, 2026.

## II. Legal Standard

Summary judgment is appropriate when the record reveals no genuine dispute of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show that no such dispute exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A factual dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020).[4] And "[a] fact is material if it might affect the outcome of the suit under the governing law." *Id.*

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 510 n.3 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). If the nonmoving party fails to

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

do so, the Court should grant summary judgment. In performing this analysis, the Court resolves all ambiguities and draws all inferences in favor of the nonmoving party. *E.g.*, *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994).

If the non-movant would bear the burden of persuasion on a given issue at trial, the movant can satisfy its burden of production either by "submitting evidence that negates an essential element of the non-moving party's claim," or "demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

## III. Discussion

### A. The Court Has Jurisdiction

Fannie Mae invokes this Court's diversity jurisdiction. Compl. ¶¶ 9-18. For diversity jurisdiction to obtain, complete diversity must exist between the parties. 28 U.S.C. § 1332(a); *see Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-103 (2d Cir. 1997).

The Court has jurisdiction over this action. Fannie Mae is a citizen of the District of Columbia. Compl. ¶ 10; *see* 12 U.S.C. § 1717(a)(2)(B). An LLC's citizenship is determined by the citizenship of each of its members. *Bayerische*

*Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). AZ 400 has two members, Ahmed and Dilruba Hussan, and both are citizens of New York. Compl. ¶ 11. Scarano Architect's sole member is a New York citizen, so it too is a New York citizen. *Id.* ¶ 14. Finally, Everyday Capital is a citizen of Maryland, where its sole member is a citizen. *Id.* ¶ 13. The parties are thus completely diverse.

**B. Fannie Mae Established Its Right to Foreclose**

The Loan and Mortgage Agreements provide that New York law governs. Loan Agreement § 15.01(a); *see* Mortgage Agreement 21. "Absent fraud or violation of public policy, a court is to apply the law selected in the contract . . . ." *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *see* N.Y. Gen. Oblig. Law § 5-1401. No party suggests that either exception applies here.

To establish a *prima facie* case for foreclosure under New York law, a plaintiff must prove (1) the existence of a valid mortgage and note, (2) ownership of the mortgage, and (3) the borrower's default. *Campaign v. Barba*, 805 N.Y.S.2d 86, 86 (App. Div. 2d Dep't 2005); *see R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997). Plaintiff has established each element.

***Existence of the Note and Mortgage.*** Fannie Mae has submitted both the Note and Mortgage Agreement, which suffices

on summary judgment. *See Yusubov v. Zoya AB Mgmt., LLC*, No. 20-CV-3913, 2023 WL 6308074, at *4 (E.D.N.Y. Sept. 28, 2023).

***Fannie Mae's Ownership of the Mortgage.*** The record also establishes that Fannie Mae owns the mortgage. A written assignment that names plaintiff as assignee can establish ownership. *E.g.*, *Freedom Mortg. Corp. v. Petriello*, No. 22-CV-7310, 2025 WL 1726320, at *9 (E.D.N.Y. June 20, 2025); *see OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016). Greystone assigned the Note, Mortgage and Loan Agreements, and Guaranty to Fannie Mae through two written agreements in May 2023, over a year before Fannie Mae brought this action. Mortgage and Note Assignment 4–6; Loan Agreement Assignment 2-3. Such evidence establishes plaintiff's ownership.

***AZ 400's Default.*** Finally, the record shows that AZ 400 defaulted in three ways. On summary judgment, a plaintiff can establish default through "an affidavit of a person with knowledge." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019). In his declaration, Fannie Mae's Mr. Noakes attests that he is "familiar with Plaintiff's record keeping practices." Noakes Decl. ¶ 6. He attests further that, based on his review of the loan records in this case, AZ 400 defaulted by failing to make its monthly loan payments, failing to provide financial reporting documents or timely cure its failure, and allowing junior liens to attach to the property. *Id.* ¶¶ 37-45.

AZ 400 does not dispute all three defaults. Pl.'s Ex. 7, Amended Responses to Pl.'s Notice to Admit 1-8, ECF No. 65-7.

Accordingly, Fannie Mae has established a *prima facie* case for foreclosure. *See Yusubov*, 2023 WL 6308074, at *4.

**C. Defendants Have Failed to Raise an Issue of Fact on Any Affirmative Defense**

Once plaintiff establishes its *prima facie* case, the burden shifts to the borrower to make "an affirmative showing that a defense to the action exists." *Gustavia Home*, 362 F. Supp. 3d at 80 (applying New York law). The court should deny summary judgment if the record reveals a dispute of material fact concerning an affirmative defense. *See F.D.I.C. v. Giammettei*, 34 F.3d 51, 54-55 (2d Cir. 1994).

AZ 400 raises no dispute of material fact. In its letter contesting summary judgment, AZ 400 argues that a gas shutoff at the property in October 2023 made performance commercially impossible. Def.'s Opp'n Ltr. 1-2. But it relies entirely on its attorney's account of this alleged incident and proffers no evidence to support it. *See id.* And it goes without saying that an "unsworn letter [is] an inappropriate response to [a] motion for summary judgment, and the factual assertions made in that letter [are] properly disregarded by the court." *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005). Accordingly, AZ 400 has failed to raise a genuine

dispute of fact on this defense.

AZ 400 raised twenty-four other affirmative defenses in its Answer but presses none of them in its opposition letter. Answer ¶¶ 83-112, ECF No. 7; *see* Def.'s Opp'n Ltr. "[I]n the case of a counseled party, a court may . . . infer from a party's partial opposition that relevant . . . defenses that are not defended have been abandoned." *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). AZ 400 has therefore abandoned these defenses. And in any event, it has offered no evidence to support them. *See Giammettei*, 34 F.3d at 54-55.

**D. AZ 400's Failure to Provide Financial Reporting Documents Was a Material Default**

AZ 400 separately argues that its "default in providing financial documents is technical and inconsequential" because it provided the documents in June 2026, well after they were due. Def.'s Opp'n Ltr. 2. Fannie Mae responds that timely financial reporting is not "inconsequential" but important, in that it enables a lender to monitor the collateral. Pl.'s Ltr. in Response to Def.'s Ltr. ("Pl.'s Response Ltr.") 3, ECF No. 99.

AZ 400's argument is unavailing. "Absent . . . fraud, exploitive overreaching or unconscionable conduct on the part of the [lender] to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties." *Leeber Realty LLC v. Trustco*

*Bank*, 316 F. Supp. 3d 594, 619 (S.D.N.Y. 2018) (quoting *Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 577 (1979)). AZ 400 has furnished no evidence of such conduct here. And courts applying New York law routinely conclude that a borrower's failure to comply with analogous reporting provisions constitutes grounds for default. *E.g.*, *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570, 2021 WL 9494173, at *3 (E.D.N.Y. Mar. 16, 2021); *Daiwa Special Asset Corp. v. Desnick*, No. 00-CV-3856, 2002 WL 1997922, at *7 (S.D.N.Y. Aug. 29, 2002).

### E. AZ 400 and Ahmed Are Both Personally Liable for Any Deficiency

Fannie Mae seeks to hold both AZ 400 and Ahmed personally liable for any deficiency that might remain after the property is sold. Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 18-20, ECF No. 64; N.Y. Real Prop. Acts. Law §§ 1301, 1371 (McKinney) (lender may pursue deficiency judgment against parties who are personally liable). On the uncontested record, both defendants are personally liable.

***AZ 400's Personal Liability.*** Article 3 of the Loan Agreement provides that AZ 400 would become "personally liable" for any deficiency resulting after a foreclosure sale, *if* certain specified events transpired. Loan Agreement § 3.02(b). Two such events occurred here: the attachment of two junior

liens to the property and AZ 400's bankruptcy filings. Pl.'s Rule 56.1 ¶¶ 43-45, 62-75.

To begin, the Loan Agreement provides that AZ 400 "shall be personally liable" if a lien is "attach[ed]" to the property. Loan Agreement § 3.02(b)(2); *id.* § 14.01(a)(6); *id.* Schedule 1; Pl.'s Rule 56.1 ¶ 45. As set out above, that provision was triggered when AZ 400 granted a junior mortgage on the property to Everyday Capital in June 2023, and again when Scarano Architect filed a mechanic's lien on the property in April 2024. Pl.'s Rule 56.1 ¶¶ 43-44.

Further, the Loan Agreement provides that AZ 400 "shall [also] be personally liable" if it files for bankruptcy. Loan Agreement § 3.02(b)(3). AZ 400 filed for bankruptcy in November 2024 and again in October 2025, ECF Nos. 25, 76, thus triggering its personal liability under this provision. New York courts have enforced similar bankruptcy clauses, *e.g.*, *First Nationwide Bank v. Brookhaven Realty Assocs.*, 637 N.Y.S.2d 418, 421 (App. Div. 2d Dep't 1996), and AZ 400 has offered no reason not to enforce the clause here.

***Ahmed's Personal Liability.*** The record also reveals no dispute that Ahmed can be held personally liable to the same extent as AZ 400 for any deficiency resulting after a foreclosure sale.

Ahmed guaranteed payment of two categories of

liability: "all amounts . . . owed to Lender under Article 3" of the Loan Agreement, Guaranty § 3(a), *and* "all costs and expenses, including reasonable fees and out-of-pocket expenses of attorneys and expert witnesses, incurred by the Lender in enforcing its rights under this Guaranty." *Id.* § 3(b). Ahmed argues that the fee-shifting provision applicable to him under Section 3(b) is "materially narrower than all legal fees Plaintiff incurred in this litigation." Guarantor's Opp'n Ltr. 2. According to him, the Guaranty does not make him liable for all of Fannie Mae's fees in enforcing the Loan Agreement, only the subset of fees incurred in enforcing the Guaranty. *Id.*

The Guaranty's plain language forecloses Ahmed's argument. Sections 3(a) and 3(b) impose independent obligations: Ahmed is liable both for all amounts under Article 3 and for the costs of enforcing the Guaranty. Neither party identifies how the fees covered by each provision might differ, but the question is immaterial, because the Guaranty expressly makes Ahmed liable for *both*. "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (2002). Because nothing in Section 3(b) purports to limit Ahmed's liability under Section 3(a), Ahmed's argument fails. *Id.*; *see Fed. Nat'l Mortg. Ass'n v. Active Mgmt. Props. LLC*, No. 23-CV-9022, 2025 WL

3451875, at *3 (E.D.N.Y. Mar. 14, 2025) (enforcing identical provision).

Article 3 of the Loan Agreement in turn leaves no doubt that it reaches the fees Ahmed contests. Article 3 covers "all of the Indebtedness," Loan Agreement § 3.02(b), which the Loan Agreement defines to include "any Enforcement Costs." *Id.* Schedule 1; *see* Mortgage Agreement 4. And Enforcement Costs include "reasonable attorneys' fees and expenses . . . incurred . . . to enforce the provisions of the Loan Agreement or any of the other Loan Documents." Mortgage Agreement 17; *see Bhungalia Fam., LLC v. Agarwal*, 317 F. Supp. 3d 727, 741-42 (S.D.N.Y. 2018) (enforcing similar provision under New York law). The record thus reveals no dispute that Ahmed can be held liable for Fannie Mae's attorneys' fees incurred in enforcing the Loan Agreement.

### F. The Court Refers the Damages Calculation to Magistrate Judge Eshkenazi for Report and Recommendation

Plaintiff seeks $23,180,967.33 as of June 30, 2025, which includes the unpaid principal and interest, attorneys' fees, and other costs incurred in managing the property. Pl.'s Mem. 23-24. Fannie Mae has also submitted a proposed judgment of foreclosure and sale of the property. ECF No. 62-1. Both defendants challenge the proposed damages award. Def.'s Opp'n Ltr. 3 ("Borrower should have an opportunity to contest the

reasonableness of the claimed legal fees."); *see* Guarantor's Opp'n Ltr. 4. But "disputes regarding the exact amount owed by the mortgagor to the mortgagee do not preclude summary judgment directing a foreclosure sale of the mortgaged property." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 200 (S.D.N.Y. 2018) (citing *Crest/Good Mfg. Co. v. Baumann*, 554 N.Y.S.2d 264, 265 (App. Div. 2d Dep't 1990)).[5]

Plaintiff's damages request and proposed judgment of foreclosure and sale are thus respectfully referred to Magistrate Judge Eshkenazi for a report and recommendation. *See, e.g.*, *Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2023 WL 7394340, at *1 (S.D.N.Y. May 4, 2023), *report and recommendation adopted*, 2023 WL 7384632 (S.D.N.Y. Nov. 8, 2023).

## IV. Conclusion

For the foregoing reasons, Fannie Mae's motion for summary judgment is granted. Plaintiff's proposed judgment of foreclosure and sale and request for damages are referred to

[5] Counsel for the receiver (Holland & Knight) stated at a July 2026 status conference that it seeks attorneys' fees "to the extent that the Court wanted to award [such] fees" for several motions it filed concerning the defendants' failure to comply with the receivership order. Status Conf. Tr. 4, ECF No. 100. New York law authorizes courts to award fees to receivers and court-approved counsel. N.Y. C.P.L.R. § 8004; *see Sherry v. U.S. Bank Nat'l Ass'n*, 662 F. App'x 39, 41 (2d Cir. 2016). And the Order appointing the receiver here provides that the receiver may "make further application to th[e] Court" "upon consummation of any sale of the Property." Order Appointing Receiver 7; *see Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, No. 11-CV-4971, 2014 WL 656062, at *4 (S.D.N.Y. Feb. 20, 2014) (awarding attorneys' fees to the receiver's counsel after the receivership concluded). The receiver and its counsel are accordingly directed to move for any fees they seek after the receivership concludes.

Magistrate Judge Eshkenazi for a report and recommendation, as discussed above. The receiver and its counsel may move for any fees after the property is sold and the receivership concludes. The Clerk of Court is also respectfully directed to amend the caption to reflect that John Doe #1 through John Doe #154 are no longer defendants. *See Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, 725 F. Supp. 3d 272, 287 (E.D.N.Y. 2024).

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: November 2, 2026
Brooklyn, New York